May it please the court, I'd like to reserve one minute for rebuttal. This case involves a man who had mental and physical disabilities who was a guest at the Culver Hotel to attend his grandson's wedding. During the morning before the wedding, he and a group of friends and relatives exited the hotel to attend a street event that was happening that day. These are excerpts of record 56 and 58. When Mr. Cohen exited the hotel, this is what he saw. He saw a van, and the record reflects that that van was parked on the sidewalk in front of the curb ramp serving the primary entrance to the event and the hotel. So what he did was he walked around the van and stepped down the curb to attend the event. Upon returning from the street event to the car show, excerpt of record 56 shows what he saw. He saw a drive-by exhibit, he saw a vehicle parked, he saw a display, he saw a van parked behind the exhibit, and he had no choice but to walk to the right of the exhibit and attempt to navigate the curb. That is where he fell and landed face forward onto the concrete sidewalk. There are two reasons why this court should reverse summary judgment. The first is because the court used the wrong standard. It used a marginally longer route standard. The second reason is because the court improperly shifted the burden to prove that the route was more than marginally longer to Mr. Cohen. The district court inciting Schoenfeld versus the city of Carlsbad, footnote 11, denied Mr. Cohen's claims as to the federal and the state statutes based on the fact that it found that there were marginally longer routes. But this standard only applies when a public entity is evaluating an existing facility that was there prior to January 27, 1992, for the purpose of determining what needs to be done to those facilities to bring them into compliance with Title II. It's to see what kind of retrofitting needed to be done. And that was the case in Schoenfeld. It dealt exclusively with what needed to be done to the existing facilities. That's not the case that we have here. The issue that we have here is whether it was proper for the city and the exchange club to alter the streets and the sidewalks, both public facilities, while at the same time eliminating an existing curb ramp at the entrance to the only public entrance to the hotel. Counsel, may I ask you, would it make a difference if alternative routes were provided that were accessible to the plaintiff? No, Your Honor. Why not? And the reason is because the statutes require a curb ramp at every entrance to public accommodations. And that was the curb ramp leading to the hotel and the event, both public accommodations. It needed to be there. So would you tell me what the strongest case you have in this circuit that supports your argument that the availability of alternative routes does not eliminate liability? Well, if we look at the Schoenfeld case, that case is what talks about marginally longer. And that case is about making retrofitting changes to existing facilities. It doesn't talk about altering a facility that was already in compliance. Right. But my specific question was whether or not there were alternative routes that were available and what the cases say about that. Even if there were not the curb access that you think is required, if there was an alternative that provided access, would that alleviate liability? I'm asking you, is there a case that says anything one way or the other about that possibility? The only case that we're aware of that discusses alternative routes is Schoenfeld. And it doesn't even appear that Schoenfeld used that notion of marginally longer route in coming to its decision. It was merely in a footnote. So I would say, as far as we know, there are no other cases that discuss alternate routes, specifically marginally longer alternate routes. That's a district court case, right? It's not a Ninth Circuit case. Well, I think it was. Wasn't it affirmed by the Ninth Circuit? Yes, it was. It was? Okay. You argued that signs are required at all crosswalks. Signs are required at accessible crosswalks. And where the crosswalks are not accessible where they need to be, as in this case, there had to be a sign indicating instructions as to where those alternative routes would have been. So Schoenfeld is your case? Schoenfeld is our case, yes. All right. And as you can see in these excerpts of record, there is no signage either entering the event or exiting the event indicating where those alternative routes were. Now, this was only a temporary happening. Yes. And according to the regulations under Title II, even a temporary alteration must be compliant. Is there a genuine issue of material fact as to whether or not your client knew that there were alternative routes? Yes, there is an issue of material fact. If there were signs, that would help show that he knew of it because there would be signs pointing to it. If there were signs, then that would be evidence that he knew of it. But there were no signs. So as I explained, the issue is not a matter of retrofitting. The issue is whether or not taking away an existing curb ramp was proper. And the regulations treat these two situations very differently. And the reason for that is with regard to retrofitting existing facilities, there's some leeway given because of the cost associated with adding additional access ways. Mr. Cohn was walking. Yes, he was, with a cane, Your Honor. As to alterations, those cost considerations just are not relevant. So for existing facilities, the standard is that the facilities must be readily accessible when viewed in its entirety. So is it your argument that there should have been a path that he could walk more easily? Is that your argument? The regulations require that he have equal facilitation, that he have access that is substantially equivalent or greater than that which is available to the general public. Right. So in translating the regulation to this particular case, what is it that should have been done by the city that was not done? The city should have been done what was economically feasible, and that simply would have meant to take that vendor and move it down the street. And not block the access. And not block the curb. Or put up signs. Or put up signs, yes. However, that doesn't fix the problem that that curb is required to be there because it serves public accommodations. It's a primary place to put a curb. All the other places are secondary. This is of the highest priority. Now, the second defendant, I'm just curious, are they the exchange? Is that a private entity or, I mean, how would you find liability against the exchange? It is a private entity. And on appeal, the claims that we have against the exchange club are the California statutes, UNRU and the Disabled Persons Act, which have much more stringent requirements than the federal ADA regulations all have. All right. We wanted to save a minute. You've got 34 seconds left. Okay. Maybe you should sit down and wait in here. Okay. It hasn't canceled. Okay. Thank you. Okay. Thank you. Good morning. May it please the Court. I'm Byron Purcell and I represent the appellees in this case. This case arises out of an incident that occurred on May 7, 2011. On that date, there was a street fair being held by the city of Culver City and the exchange club. The city had its traffic engineer check the area and provide an accessible route to allow traffic to flow, as well as to allow for the vendors to align themselves along the street by the pure nature of it being a street fair. Thus, as you see from the photographs, there were booths and vendors lined up along the street. Wouldn't it be a simple matter just to leave open the existing access way? Well, Your Honor, as per jurisprudence, there is, as long as there are alternative routes, and in this situation, there were alternative routes as testified to by the traffic engineer, Mr. Garcia, that there was an additional route only 20 yards away that could have been accessed by Mr. Cullen. Were there any signs that pointed to the alternative route? Your Honor, we're not aware of any requirement. There were no signs and we're not aware of any requirement on any street corner or access. 28 CFR Section 35.163 requires the city to post signage at all inaccessible entrances to its facilities, directing users to an accessible entrance. Public sidewalks are considered facilities. So isn't that a requirement? Your Honor, it's our position that there's no requirement as to the actual sidewalk having signage on it. That that would be an access way leading into a facility building as such, as indicated in that code section. And so when they're talking about that code section, they were, it's our position, referring to the access to directly enter into the facility building. Here in this situation, I don't believe there's any argument or any claim by anyone that would imagine that every corner, street corner, there needs to be a ramp or that there needs to be signage at every street corner or ramp. Well, I think we have to, don't you agree that we have to distinguish the cases when we're, that apply to retrofitting versus the cases that apply to construction. I also believe that in this situation we actually have a temporary change. We don't have a situation where there's any remodeling or reconstruction going on. We simply have a day use event, that being a street fair. And in this situation, which was a little unique from most situations, there was the fact that you wanted to have the access way be the street so that it would maximize the use that was intended for. That one vendor had his, was blocking the access way to the hotel, right? The place of public accommodation? Well, as the record indicates, there were several access ways to the hotel. This was not the only one. And as testified to by Mr. Garcia, the traffic engineer, there was one marginally longer route away. As stated in Schoenfeld, there was one way to get to the hotel. So that would be a proper. Also, if you look at Parker, Parker's another case which states that you don't have to have each and every access way, that's, you just need to make sure you have an alternative access way. And that's what the lower court, Judge Klausner found, that there was another alternative. Doesn't Parker's say that the unsafe condition of a disabled access route can violate the ADA, even if there were alternative routes? When they were unknown to the plaintiff? Well, again, now you can look at Chaffin, and they talk about the fact that you have to have alternative routes, and there's a, you've got to look at it in the totality of circumstances, not, they say to look at it as a whole, and not each and every element is a specific language in Chaffin. And they indicate that you don't need to have each and every access way be available, that as long as there is an adequate alternative access way, then that's sufficient. But under Parker and Schoenfeld, we're concerned with the city's obligation under the ADA when renovating existing facilities. How do those cases apply here? Well, I think the similar logic would apply here in terms of alternative access and routes. That's what we would argue, that's our argument in our position, and I think that's what Judge Klausner found, was similarly, the fact that you have an alteration, albeit temporary in this case, still you would, again, apply these same principles and say, well, there's an alternative route, you can access that. And in this situation, from the facts as indicated, Mr. Cohen had, there's no allegation that he did not have access to the hotel or the car show. In fact, he left the hotel, traversed the same area that he eventually falls on, and enters the car show, walks around for several hours, and then is returning back. There's no evidence of any attempt even to use the ramp that's indicated. But is there any evidence that he knew about the alternative route? There's no evidence one way or the other, Your Honor, but it's our position that here there was a readily accessible alternative route that he could access, and this is similar. As a practical matter, though, shouldn't the city of Culver not block existing routes, or if you're going to block one, just put a sign up and say handicap access over there? I mean, as a practical matter going forward, wouldn't you advise your client to do that today? Well, I think, again, as Judge Klozner found, there's an open and obvious area, and it's open and obvious as you walk and traverse the area. If you see along the street that there's a 20 yards away, which is about the distance from your Honor to the back of the room, that there is another ramp there. Is that a question, a fact that's in dispute, whether he knew it or saw it? Well, I don't believe there's even an issue as to whether he knew it or saw it. I think that it was there, and it was accessible. And there was, in the evidence, there was no attempt to even look or use a ramp. That's not in the record. In fact, there was a testimony from his sister-in-law who was escorting him that day, and he was following her, and she said there was no, that was the furthest thing from their minds even to look for a ramp, that they were taking the direct route to the hotel, and that was over the curb, and he was following directly behind her. How did he get to the street fair initially? How did he get there? To the street fair initially. By traversing that same area, curb. He walked out, went over the same curb, went to the street fair for several hours, and returned that same route. He took the route, chose, purposely chose, following his sister-in-law, the direct route to the hotel, when there were adequate alternatives which are consistent with the law in this area. But there was no evidence that he knew where they were? Was there nothing in the record? There's nothing in the record that shows that he was aware of any alternatives. Okay. And there were no signs? There were no signs at the time. Now, it's our position that no, the signage is not necessary in this area when it's open and obvious, one, and two, there's no requirement, case law or site to any authority that says on each and every sidewalk you need to have signage. And I believe the other cases demonstrate that that is a potential alternative that one may use in terms of directing to other routes. And again, you have to look at the whole and not each and every element. The law does not provide, the jurisprudence does not provide that you must provide each and every door that has an entranceway or has a passageway be available to everyone all the time. And you don't take issue with the fact that the plaintiff was using a cane to walk, do you? We do not take issue with that. We think that it was up to him and those caregivers that were with him to make sure that he used the most convenient and safe route for his travel. And again, there is, from the record, there is no mention of even an attempt to use an alternative route. Or even look for the ramp to use. And again, the ramp was not used in the first instance. There's no more questions for the court? Okay. Thank you. You have a minute. With due respect to counsel, it doesn't, it's not valuable to continue to argue based on a standard that doesn't apply. The marginally longer route has to do with retrofitting existing facilities. Well, his position was this was the most analogous situation to what was happening here. It was an alteration, I'll do it temporary. What's your response? It was a temporary alteration. Schoenfeld had nothing to do with a temporary alteration. What does have to do with a temporary alteration? What has to do with a temporary alteration is 28 CFR part 36 appendix A, section 4.1.14. 28 CFR section? Part 36 appendix A, section 4.1.1, subsection 4. What does that one say? It's regarding temporary structures. It says these guidelines cover temporary buildings or facilities as well as permanent facilities. So there's no exception. The statute, the section I was looking at I think maybe takes that down one level. It says section 35.133, a public entity shall maintain an operable working condition. Those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the act of this part. This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. And this is clearly not maintenance or repairs. Correct. And even in that case, the regulations would require temporary access at that location. Because it needs to correspond with what the general public has. If the general public has access, a person with disabilities must have access at that same location. And the standard for alterations is much more stringent. It must be readily accessed to the maximum extent feasible. That would have meant just simply moving the vendor down the street. All right. Thank you, counsel. Thank you.
judges: Nelson, Wardlaw, Rawlinson